## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISION

JONATHAN ALLEN,                              )
                                             )
      **Petitioner,**                        )
                                             )          **CIVIL ACTION NO. 5:18-01306**
**v.**                                       )
                                             )
**WARDEN D.L. YOUNG,**                       )
                                             )
      **Respondent.**                       )

### PROPOSED FINDINGS AND RECOMMENDATION

On September 20, 2018, Petitioner, acting *pro se*, filed his Application Under 28 U.S.C. §

2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody and Memorandum in

Support. (Document Nos. 2 and 3).[1] In his Petition, Petitioner complains that his due process

rights were violated during disciplinary proceedings. (Id.) Petitioner explains that he received an

Incident Report on April 26, 2018, for his alleged possession of a "possible SIM card." (Id.)

First, Plaintiff complains of "lack of notice" because "no actual code violation observed." (Id.) In

support, plaintiff states that Officer J. Hill "never identified the possible contraband." (Id.)

Second, Plaintiff alleges he was denied his right to present evidence and a witness. (Id.) Plaintiff

states that his DHO Hearing was conducted on July 17, 2018. (Id.) Plaintiff claims he requested

Dr. Jason Weaver as a staff representative and two inmates as witnesses. (Id.) Plaintiff explains

that the "Notice of Discipline Hearing Before the DHO listed Inmate S. McCallister, #

08479-088 as a witness." (Id.) Plaintiff, however, complains that Inmate McCallister was "not

called or presented." (Id.) Third, Plaintiff asserts there was "no possession." (Id.) Plaintiff claims

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent
standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*,
404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

there are 1,637 inmates at FCI Beckley and approximately 400 inmates had access to the area the contraband was discovered. (Id.) Plaintiff further states that the Incident Report states that the alleged contraband was found in cell P05-216, and Petitioner's cell assigned was P06-216L. (Id.) Finally, Petitioner argues that he did not receive a written copy of the hearing record. (Id.) Plaintiff, therefore, claims there is "no record of hearing, no reasons listed for loss of good time, no record of DHO hearing or facts." (Id.) Plaintiff states that DHO M. Leslie failed to "list evidence relied on and how she reached her decision or the reasons for the loss of good time." (Id.) As relief, Petitioner requests that the Court "hear Petition on the merits, expunge disciplinary hearing, grant relief, and restore good time credits." (Id.)

As Exhibits, Plaintiff attaches the following: (1) A copy of his "Declaration Under Penalty of Perjury" (Document No. 4, pp. 1 - 2.); (2) A copy of the Incident Report dated April 26, 2018, charging Petitioner with violating Offense Code 108, Possession of a Hazardous Tool/Electronic Device (Id., p. 3.); (3) A copy of the "Notice of Discipline Hearing Before the DHO" dated June 10, 2018 (Id., p. 4.); (4) A copy "Inmate Rights at Discipline Hearing" dated April 30, 2018 (Id., p. 5.); (5) A copy of Petitioner's "Inmate Request to Staff" dated September 6, 2018 (Id., p. 6.); (6) A copy of Petitioner's "Administrative Remedy Generalized Retrieval" dated September 6, 2018 (Id., p. 7.); (7) A copy of Petitioner's "Central Office Administrative Remedy Appeal" dated August 16, 2018 (Id., p. 8.); (8) A copy of a "Rejection Notice – Administrative Remedy" dated August 13, 2018, from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office (Id., p. 9.); (9) A copy of Petitioner's "Regional Administrative Remedy Appeal" dated July 31, 2018 (Id., p. 10.); (10) A copy of Petitioner's "Inmate Discipline Data Chronological Disciplinary Record" dated July 30, 2018 (Id., p. 11.);

(11) A copy of Petitioner's "Sentence Monitoring Computation Data As Of 04-03-2018" (<u>Id.</u>, p. 12.); (12) A copy of pertinent pages from the Federal Prison Guidebook (<u>Id.</u>, pp. 13 – 14.); (13) A copy of Petitioner's "Inmate Request to Staff" dated August 31, 2018 (<u>Id.</u>, p. 14.); and (14) A copy of a Memorandum to inmates dated August 7, 2018, regarding legal paperwork (<u>Id.</u>, p. 15.).

By Order entered on October 30, 2018, the Court ordered that Respondent file an Answer to the allegations contained in the Petitioner's Application and show cause, if any, why the Writ of Habeas Corpus sought by the Petitioner in this case should not be granted. (Document No. 9.) On November 16, 2018, Respondent filed his Response to the Order to Show Cause. (Document No. 15.) Respondent argues that Petitioner's Petition should be denied based upon the following: (1) "Petitioner failed to exhaust his administrative remedies" (<u>Id.</u>, pp. 7 – 9.); and (2) "Petitioner received the rights afford pursuant to <u>Wolff</u>" (<u>Id.</u>, pp. 9 – 11.).

As Exhibits, Respondent attaches the following: (1) The Declaration of Tiffanie Little (Document No. 15-1, p. 1.); (2) A copy of Incident Report No. 3117490 (<u>Id.</u>, pp. 4 – 8.); (3) A copy of a Memo dated April 27, 2018 from SIS Technician T. Toney directed to Warden David Young requesting permission to proceed with administrative disciplinary process as to Petitioner's possession of a SIM card (<u>Id.</u>, p. 9.); (4) A copy of a Memo dated June 12, 2018, from Unit Manager Erin Stennett directed to Warden Young requesting permission to proceed with the UDC hearing beyond the five days mandated by Program Statement 5270.09 (<u>Id.</u>, p. 11.); (4) A copy of the "Notice of Discipline Hearing Before the DHO" form dated June 10, 2018 (<u>Id.</u>, p. 13.); (5) A copy of the "Inmate Rights at Disciplinary Hearing" form dated June 10, 2018 (<u>Id.</u>, p. 15.); (6) A copy of the Discipline Hearing Officer Report dated November 6, 2018 (<u>Id.</u>, pp. 17 – 20.); and (7) A copy of Petitioner's "Administrative Remedy Generalized Retrieval"

dated November 1, 2018 (Id., pp. 22 – 33.).

By Order and Notice entered on September 16, 2018, the undersigned advised Petitioner of his right to file a Reply to Respondent's Response. (Document No. 16.) On December 6, 2018, Petitioner filed his Reply. (Document No. 17.) First, Petitioner argues that he is "actually innocent" because "he did not possess, control, or have any vested or non-vested interest in the contraband that he was charged with." (Id.) Second, Petitioner argues that he exhausted all administrative remedies. (Id.) Petitioner contends that "all administrative remedies were denied for lack a DHO report." (Id.) Petitioner claims he could not provide the DHO report because such was withheld from Petitioner. (Id.) Petitioner asserts that the attachment of the DHO report was not a requirement of administrative remedy process. (Id.) Third, Petitioner argues that there was not "some evidence" to support the DHO's decision because approximately 400 inmates had access to the "unsecure area" where the contraband was discovered. (Id.) Petitioner further argues that even though money was discovered in Petitioner's bunk, "280 inmates had access to his bunk." (Id.) Fourth, Petitioner continues to argue that his due process rights were violated because he did not receive a copy of the "hearing record." (Id.) Although Petitioner acknowledges that he received a copy of the DHO report after filing the above Petition, Petitioner claims that "withholding the report prejudiced the Petitioner." (Id.) Finally, Petitioner argues that he was prejudiced "by the DHO not calling witness until months after the incident even though he (Inmate McCallister) could have been called at the first DHO hearing to preserve evidence." (Id.)

As Exhibits, Petitioner attaches the following: (1) A copy of a "Rejection Notice – Administrative Remedy" dated August 13, 2018, from the Administrative Remedy Coordinator

4

at the Central Office (Id., p. 11.); (2) A copy of a "Rejection Notice – Administrative Remedy"
dated September 21, 2018, from the Administrative Remedy Coordinator at the Mid-Atlantic
Regional Office (Id., p. 12.); (3) A copy of Petitioner's "Administrative Remedy Generalized
Retrieval" dated September 6, 2018 (Id., p. 13.); (4) A copy of Petitioner's "Declaration Under
Penalty of Perjury" (Id., pp. 14 – 15.); (5) A copy of Inmate Antonio Gibson's "Declaration
Under Penalty of Perjury" (Id., p. 16.); and(6) A copy of Inmate Jeff Mbuenchu's "Declaration
Under Penalty of Perjury" (Id., p. 17.).

## DISCUSSION

**1.     Failure to Exhaust Administrative Remedies:**

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts
consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas*
review under Section 2241. See McClung v. Shearin, 90 F. Appx. 444, 445 (4th Cir.
2004)(unpublished)(citing Carmona v. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001));
Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir.
1994). Exhaustion allows prison officials to develop a factual record and an opportunity to
correct their own errors before being haled into Court.  See Jones v. Bock, 549 U.S. 199, 204,
127 S.Ct. 910,166 L.Ed.2d 798 (2007); McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct.
1081, 117 L.Ed.2d 291 (1992). The purpose of exhaustion, however, is frustrated "[w]hen an
inmate attempts to exhaust an issue before the issue is ripe for review [because] the BOP is
deprived of its opportunity to properly address the issue before being haled into court." Specter v.
Director, 2010 WL 883733, * 4 (D.S.C. Mar. 5, 2010)(slip copy)(finding that petitioner failed to
properly exhaust his claim for RRC placement because "no recommendation or decision had

been made in his case yet and would not occur until 17 to 19 months prior to his anticipated release date").

The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. If informal resolution is unsuccessful, the inmate must submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests. 28 C.F.R. § 542.14. If the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10 form. Id., § 542.15(a) and (b).

An inmate, however, challenging a DHO's decision does not file a BP-9. See Id., § 542.14(d)(2). "DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located." Id. DHO appeals must be filed on a BP-10 form and accompanied by a copy of the response the inmate received at the institutional level that the inmate wishes to appeal. Id., § 542.15(b)(1). "For DHO and UDC appeals, each separate incident report number must be appealed on a separate form." Id., § 542.14(c)(2). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., §

542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his Response, Respondent argues that Petitioner failed to exhaust his administrative remedies. (Document No. 15, pp. 7 – 9.) Respondent notes that Petitioner filed a DHO appeal on August 6, 2018 (Remedy ID No. 949879-R1). (Id., p. 8.) Respondent states that Petitioner's administrative remedy was rejected on August 13, 2018, because Petitioner did not provide a copy of the DHO report "or otherwise identify the charge and date of the DHO action he was appealing." (Id.) On September 7, 2018, Petitioner filed an appeal of the DHO action with the Central Office (Remedy ID No. 949879-A1). (Id.) Respondent notes that this remedy was rejected because the DHO appeal was submitted to the wrong level/office. (Id.) Respondent notes that "[a]t the time Petitioner filed this action, the DHO had not completed the DHO report [and] [n]ow that the report is completed, Petitioner is able to challenge the disciplinary action by filing administrative remedies." (Id.) Respondent, therefore, argues that Petitioner's Petition should be dismissed for failure to exhaust. (Id.)

In Reply, Petitioner argues that he properly exhausted his administrative remedies. (Document No. 17.) Petitioner contends that "all administrative remedies were denied for lack a DHO report." (Id.) Petitioner claims he could not provide the DHO report because such was withheld from Petitioner. (Id.) Petitioner asserts that the attachment of the DHO report was not a requirement of administrative remedy process. (Id.) Specifically, Petitioner relies upon the Administrative Remedy Rejection Notice from the Regional Office stating that his appeal was

rejected because "you did not provide a copy of the DHO report you wish to appeal or identify the charges and date of the DHO action." (Id.)

The undersigned finds that Petitioner failed to properly exhaust his administrative remedies prior to initiating the above proceeding. See Woodford v. Ngo, 548 U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)(internal citations omitted)("[T]he law of habeas, like administrative law, requires proper exhaustion, and we have described this feature of habeas law as follows: To . . . protect the integrity of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies . . ..). Under the BOP's established Administrative Remedy Program, Petitioner was required to file a BP-10 with the DHO Report attached in the Mid-Atlantic Regional Office within twenty (20) days of receiving the DHO Report. See 28 C.F.R. § 542.14(d)(2). The record reveals that Petitioner's DHO hearing was conducted on July 17, 2018, and Petitioner initiated the administrative remedy process 14 days later by completing a BP-10 (Regional Administrative Remedy Appeal dated July 31, 2018). (Document No. 4, p. 10.) Petitioner's BP-10 was received by the Regional Office on August 6, 2018. (Id., pp. 9 – 10.) By Rejection Notice dated August 13, 2018, the Regional Office notified Petitioner that his appeal was rejected because "you did not provide a copy of the DHO report you wish to appeal or identify the charges and date of the DHO action." (Id., p. 9.) Petitioner prepared a "Central Office Administrative Remedy Appeal" (BP-11), which he dated August 16, 2018. (Id., p. 8.) Petitioner's appeal was received by the Central Office on September 7, 2018. (Document No. 17, p. 11.) By Rejection Notice dated September 21, 2018, the Central Office notified Petitioner that he submitted his appeal to the wrong level, he should have filed at the Regional Office, and the office concurred "with rationale

of Regional Office for rejection." (Id.) Petitioner was directed to "follow directions provided on prior rejection notice." (Id.) Petitioner initiated the above action on September 20, 2018. (Document Nos. 1 – 4.). The DHO Report was prepared on November 5, 2018, and provided to Petitioner on November 6, 2018. (Document No. 15-1, pp. 17 - 20.) The DHO Report notified Petitioner of his appeal rights as follows:

> The inmate has been advised of the findings, specific evidence relied on action and reasons for the action. The inmate has been advised of the right to appeal this action within 20 calendar days under the Administrative Remedy Procedures.

(Id., p. 20.) Petitioner clearly failed to properly exhaust his administrative remedies after receiving a copy of the DHO Report. To the extent Petitioner is arguing that there was no requirement the DHO Report be attached to the BP-10, Petitioner argument is without merit. The BOP rules required Petitioner "to file a BP-10 with the DHO Report attached in the Mid-Atlantic Regional Office within twenty (20) days of receiving the DHO Report." Strouse v. Wilson, 2014 WL 843276, * 5 (E.D.Va. March 4, 2014), aff'd, 575 Fed.Appx. 115 (4th Cir. 2014); also see 28 C.F.R. § 542.14(d)(2) and 542.15(b)(1). Further, Petitioner's reference to the charge and date of the DHO action was not an appropriate substitute for the DHO Report. See Shannon v. Deboo, 2011 WL 128131, * 2 (N.D.W.Va. Jan. 14, 2011)(rejecting petitioner's argument that he exhausted his administrative remedies because he identified the charges and date of the DHO action). Section 542.15(b)(1) provides that DHO appeals must be filed on a BP-10 form and accompanied by a copy of the response the inmate received at the institutional level that the inmate wishes to appeal. Id., § 542.15(b)(1). Therefore, Petitioner was clearly required to attach a copy of DHO Report that he was appealing. See Strouse, 2014 WL 843276, at * 5(finding petitioner failed to properly exhaust where petitioner did not file a BP-10 attaching a copy of the

DHO Report); Shannon, 2011 WL 128131, at * 2("Because the petitioner filed his appeal before receiving written notification of the DHO decision in question, his appeal was premature, and he did fail to exhaust his administrative remedies.").

Furthermore, Petitioner appears to argue that he should be excused from exhaustion because prison staff rendered the process futile by failing to provide him with a copy of the DHO Report. Exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury. In the instant case, the record reveals that Petitioner received a copy of the DHO Report approximately three-months after the DHO hearing was conducted. The mere delay in receiving a copy of the DHO Report does not render the administrative remedy process futile if the inmate is still given the opportunity to file an appeal after receiving the report. The undersigned finds that Petitioner received a copy of his DHO Report approximate three months after the DHO hearing was conducted, Petitioner was advised of his right to appeal, and Petitioner chose not to do so. Other courts addressing similar circumstances have determined that delay in proving an inmate with a copy of the DHO Report fails to provide a basis for excusing exhaustion. See Staples v. Chester, 370 Fed.Appx. 925, 929-30 (10th Cir. 2010)(an eight-month delay in providing an inmate with a copy of the DHO Report was insufficient to excuse exhaustion); Hrycuna v. Ormond, 2019 WL 1304250, * 4 – 5 (E.D.Va. Feb. 19, 2019)(finding the administrative remedy process was not rendered futile by petitioner's delay in receiving a copy of the DHO report because petitioner subsequently received a copy of the DHO report and failed to attempt to proper exhaust his administrative remedies); Strouse, 2014 WL 843276 at * 5(two-month delay in providing the DHO Report failed to provide a basis for excusing exhaustion); Lindsey v. Thomas, 2014 WL 389005, * 5 (M.D. Pa. Aug. 8, 2014)(rejecting

petitioner's request to be excused from the exhaustion requirement because he did not receive a copy of the DHO Report for over two months after it was signed and dated).[2] Based on the foregoing, the undersigned finds that Petitioner is not excused from exhausting his administrative remedies and his Petition should be dismissed. Notwithstanding the foregoing, the undersigned will briefly consider the merits of Petitioner's claim.

**2.**     **Due Process Violation Pursuant to <u>Wolff</u>:**

In considering an inmate's application for *habeas* relief under 28 U.S.C. § 2241, the Court must consider whether the Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); <u>Rose v. Hodges</u>, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). Although the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law," the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for their period of incarceration. <u>See</u> U.S. Const. Amend. XIV, § 1; <u>Gaston v. Taylor</u>, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. <u>Gaston</u>, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." <u>Gaston v. Taylor</u>, 946 F.2d at 343 (emphasis added).

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. <u>See</u> <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33

---

[2] In the instant case, Petitioner received a copy of his DHO Report within a one day of such being signed and dated by the DHO. (Document No. 15-1, pp. 17 – 20.)

L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, in order to establish that a deprivation of his due process rights has occurred, Petitioner must identify a liberty interest which is protected by the Due Process Clause of the United States Constitution. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that an inmate cannot be deprived of a protected liberty interest in good-time credits without procedural due process).

When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal procedural guarantees are recognized. Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). The Supreme Court stated what procedure is required at a minimum in Wolff, supra. An inmate subject to administrative disciplinary sanctions impacting the duration of his sentence is entitled (1) to receive advance notice of charges no less than 24 hours before the disciplinary hearing, (2) to present evidence and witnesses in his defense as long as it does

12

not jeopardize institutional safety or correctional goals, and (3) to receive a written statement of the evidence relied upon and the reasons for the disciplinary action. Id., 418 U.S. at 563 - 569, 94 S.Ct. at 2978 - 2981. BOP regulations are clearly written in view of the constitutionally required minimum, but the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation when a protected liberty interest is evident as long as the constitutionally required minimum is met. See Myers v. Klevenhager, 97 F.3d 91, 94 (5th Cir 1996); Giovanni v. Lynn, 48 F.3d 908, 913 (5th Cir. 1995), cert. denied, 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). The undersigned notes additionally that the Supreme Court has indicated that prison regulations are not designed to confer rights on or benefits to inmates. Rather, they are primarily designed to guide correctional officials in the administration of prisons. Sandin v. Conner, 515 U.S. 472, 481- 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Having thoroughly examined the record in this case, the undersigned finds no indication of error of constitutional magnitude in the disciplinary proceedings. It is clearly evident that in charging and considering Petitioner's violation of Offense Code 108, prison officials adequately adhered to the policies and procedures as prescribed in 28 C.F.R. § 541 and the Bureau of Prisons' Program Statement 5270.07. A review of the record reveals that Petitioner received all of the minimum due process safeguards set forth in Wolff. Petitioner received all documents pertinent to the charges against him, was advised of his rights, and had ample opportunity to present a defense to those charges. The record reveals that Petitioner received written notice of the charges at least 24 hours before the DHO hearing. Specifically, Petitioner received a copy of the re-written Incident Report on June 6, 2018, and the DHO hearing was conducted on July 17,

2018. (Document No. 15-1, pp. 4 – 7, 17 – 20.) Petitioner, however, first complains that Respondent violated his due process rights because he did not receive a copy of his Incident Report within 24 hours after the incident occurred. The regulations merely provide that an inmate is "ordinarily" entitled to a copy of his Incident Report within 24 hours after staff becomes aware of the inmate's involvement in the incident. See 28 C.F.R. § 541.5(a)("A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of the staff becoming aware of your involvement in the incident.") The record reveals that underlying incident occurred on April 24, 2018, and due to an administrative lock-down the initial Incident Report was not written until April 26, 2018. (Document No. 4, p. 3 and Document No. 15-1, p. 9.) The initial Incident Report was delivered to Petitioner the following day, on April 27, 2018. (Document No. 4, p. 3.) The initial Incident Report was referred to the DHO, who referred the Incident Report back to Lt. Hill to be re-written to better describe the contraband. The Incident Report was re-written on June 6, 2018, and served upon Petitioner the same day by Lieutenant Denny. (Id., p. 11.) The undersigned, therefore, finds that prison officials did not violate Section 541.15(a) as such provides that inmate's "ordinarily" receive the Incident Report within 24 hours of staff becoming aware of the incident. Furthermore, the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation. See Smith v. Cross, 2010 WL 5525178, * 5 (N.D.W.Va. June 11, 2010)("[T]he fact that the petitioner did not receive the incident report until seven days after the incident occurred, and did not have his UDC hearing within five working days does not present a denial of the petitioner's due process guarantees.") Accordingly, prison officials' failure to provide Petitioner

14

a copy of his Incident Report within 24 hours of the incident did not result in a due process violation.

In his Petition, Petitioner initially complained that he had not yet received a copy of the DHO Report. The record, however, clearly reveals that Petitioner has now received a copy of the DHO Report. Thus, Petitioner's claim that the failure to provide a copy of the DHO Report resulted in a due process violation is moot. In his Reply, Petitioner appears to complain that the DHO Report was untimely prepared. The regulation provides that an inmate "will receive a written copy of the DHO's decision following the hearing." See 28 C.F.R. § 541.8(h). The BOP's Program Statement 5270.09 provides that that an inmate is "ordinarily" entitled to a copy of the DHO's decision within 15 work days of the DHO's decision. See P.S. 5270.09 ("The DHO gives the inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision.") The record reveals that the DHO Hearing was conducted July 17, 2018, DHO's written decision was entered on November 5, 2018, and Petitioner received a copy of the DHO Report on November 6, 2018. (Document No. 15-1, pp. 17 - 20.) The undersigned, therefore, finds that prison officials did not violate Section 541.8 or P.S. 5270.09. Again, as stated above, the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation. See Smith, 2010 WL 5525178, at * 5; Shahan v. Ormond, 2018 WL 6681210, * 5 (E.D.Va. Dec. 19, 2018)("To the extent that [petitioner] claims that staff violated BOP Program Statement 5270.09 by failing to provide him with a copy of the DHO Report within the advisory fifteen-day period, the BOP's failure to abide by internal directives of this ilk does not give rise to a claim for habeas relief.") Accordingly, Petitioner's above due process claims is without merit as the record clearly reveals that Petitioner

received a written copy of the DHO's decision.

Finally, the undersigned will consider Petitioner's claim that his due process rights were violated because he was denied his right to call a witness. (Document No. 2.) A review of the record reveals that Petitioner was provided a "Notice of Discipline Hearing Before the DHO" on June 10, 2018. (Document No. 4, p. 4.) On the "Notice of Discipline Hearing Before the DHO," Petitioner indicated that he requested staff representation by Dr. Weaver and wished to call two inmates as witnesses: Inmate A. Gibson and Inmate S. McCallister. (Id.) The DHO hearing was held on July 17, 2018, and Petitioner appeared in person and by Dr. Weaver as staff representation. (Document No. 15-1, pp. 17 – 20.) The DHO noted that Dr. Weaver made the following statement concerning Petitioner's requested witness:

> D. Weaver was present at the DHO Hearing and stated that inmate Allen requested inmate McCallister as one witness; however he had released to the halfway house and Dr. Weaver had stated that he called of the last known number of the inmate but could not make contact with the witness. This was explained to inmate Allen at the DHO Hearing. Dr. Weaver also stated that inmate Allen still requested inmate Gibson and DHO explained that she was going to inmate Gibson as a witness for the DHO Hearing.

(Id., p. 17.) The DHO Report reveals that Inmate Gibson was called as a witness on Petitioner's behalf. (Id., p. 18.) The DHO Report further confirms that Plaintiff requested Inmate McCallister as a witness, but Inmate McCallister had been released from custody and Dr. Weaver had attempted, but was unable, to make contact with him. (Id., p. 18.) The regulations clearly provide that an inmate may request witnesses appear at the disciplinary hearing to testify on his behalf, but the witnesses may not appear "if, in the DHO's discretion, they are not reasonably available, their presence at the hearing would jeopardize institutional security, or they would present repetitive evidence." 28 C.R.F. § 541.8(3). The regulations further provide that if the requested

16

witnesses are unavailable to appear, written statements can be considered during the DHO hearing. 28 C.R.F. § 541.8(4). Neither Petitioner nor Dr. Weaver offered a written statement from Inmate McCallister. The record further reveals that Dr. Weaver made reasonable attempts to contact the inmate as a witness, but his attempts were unsuccessful. Therefore, the DHO acted within his discretion in concluding that Inmate McCallister was not reasonably available. The record is void of any evidence that Petitioner was denied to right to present witnesses, who were available. Accordingly, the undersigned finds that Petitioner's above due process claim is without merit.

**3.    Insufficient Evidence:**

Petitioner appears to contend that there was insufficient evidence to support the DHO's decision. Specifically, Petitioner contends that he should not be held accountable for the SIM card found in the locker because there was no evidence that the SIM card belonged to Petitioner or that he placed such in the locker. Petitioner argues that he was unaware of the SIM card and the card must have been planted by another inmate. Plaintiff claims that his locker was unsecured and accessible by 400 inmates because "inmate at FCI Beckley have free range and access to the living quarters of all inmates."

The Supreme Court explained that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. Thus, *Wolff* stands for the proposition that a prisoner is not guaranteed unfettered access to exculpatory evidence in the context of a disciplinary hearing." Johnson v. Warden, FCI Williamburg, 2014 WL 4825926, * 2 (D.S.C. Sept. 24, 2014), aff'd  597 Fed.Appx. 161 (4th Cir. 2015), cert. denied, ___ U.S. ___, 136 S.Ct. 556, 193 L.Ed.2d 430 (2015). In disciplinary

hearings, due process is satisfied when the findings of the disciplinary authority are supported by "some evidence." Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985). The requirement that the disciplinary authority's findings be supported by "some evidence" "does not in any way imply that prison disciplinary bodies must consider all possible evidence." Landry v. Adams, 2007 WL 869224, * 4 (E.D.Va. March 19, 2007)(finding petitioner's due process rights were not violated by the unavailability of surveillance video evidence). The undersigned finds that prison staff and the DHO acted fully within their discretion in developing the evidence which resulted in the finding that Petitioner was guilty of violating Offense Code 199. The finding was supported by the evidence and the imposed sanctions were lawful and appropriate. In addition to the Incident Report, the DHO considered Officer Hill's statement as contained in the Incident Report, Petitioner's statement, Inmate Gibson's statement, and two photographs of the SIM card. (Document No. 15-1, pp. 17 - 20.) In finding that Petitioner violated Code 199[3], the DHO specifically stated that it relied upon the following:

> The DHO finds that Inmate Allen committed the prohibited act of Possessing a Hazardous Too. To Make this finding the DHO relied on the following statement provided by the reporting officer which was contained in the Incident Report:
>
>> On April 24th, 2018 at approximately 10:15 am, I was assisting the SIS office with shakedowns in Pine B Lower. While searching cell 216 occupied by Inmates ALLEN, Johnathan #14191-084 and [Inmate X], I began to search the lockers. Both lockers were unsecured, although I was able to very Inmate Allen's locker by personal property (DHO reports, pictures, mail) and institutional clothing with Inmate Allen's name and reg number. While search Inmate Allen's locker, I opened a box of soap which was in the far back corner of the locker at the bottom of other soap boxes. When I

---

[3] The DHO determined Petitioner violated Code 199 instead of 108. Section 541.7(a)(1) provides that the DHO may determine that an inmate "committed the prohibited act(s) charged and/or similar prohibited act(s) as described in the incident report."

18

opened the soap box, I noticed a wrapped up piece of paper with something inside lying next to a bar of soap. As I unwrapped the paper, I saw what appears to be a SIM card to a cell phone. Upon further inspection, the SIM card says "Sprint" on it. SIS Technicians T. Toney and T. Sweeny confiscated the SIM car and we secured the cell.

Inmate Allen made the following statement to the Investigation Officer, "It wasn't mine." At his UDC Hearing he stated, "I request all evidence, chain of custody photo sheet." Inmate Allen appeared before the DHO and denied the charge. Inmate Allen stated, "The SIM card was not mine and I don't know how it got there. I think the staff that searched the cell looked in the wrong locker. My legal papers, DHO paperwork, and my photos were all on the table in the common area of the unit and not in my locker."

DHO considered Inmate Allen's denial of the charge, but was not convinced by his statement. Allen would have the DHO believe that he had no knowledge of the SIM card and that it was not his and that he though the staff searched the wrong locker and he had all of his photos and DHO paperwork on the desk in the unit common area and not in his locker. DHO explained that the report writer found his DHO paperwork, personal photos, institutional clothing in the locker and that he searched. The SIM card was discovered in the area known for hiding contraband and should have been search by Allen. The DHO explained to Allen that it is his responsibility to ensure all areas under his complete control, or partial control, are free of contraband.

DHO also considered the statement of Inmate Gibson, but DHO noted that Inmate Gibson stated that Allen was working on legal paperwork for him. DHO asked if he recalls seeing Allen's personal photos or legal paperwork on the desk as well and he stated that he did not see his paperwork or photos. This contradicted what Allen's testimony at the DHO hearing that he had personal photos and his DHO paperwork on the desk in the middle of the unit. This further casts doubt on Allen's testimony to the DHO.

Granted a SIM card is not in and of itself an electronic device. However, the fact that the SIM card serves no other function than to provide support to a cellular telephone, which is an unauthorize electronic device, Allen's possession of this item, constituted a disruption that was most like the prohibited act of possessing an electronic device.

Accordingly, the DHO finds Allen committed the prohibited act of Code 199, Conduct which Disrupts the Orderly Running of the Institution – most like Code 108, Possession of an Electronic Device. The charge of Code 108 was changed to Code 199 – most like Code 108. This was done because the SIM card is used to

support an electronic device and is not an electronic device on its own. The DHO
believes this is the most appropriate charge.

(Id., p. 19.)

The record further reveals that the DHO Officer considered and rejected Petitioner's
claim that he was unaware of the SIM card and that it had been planted by another inmate. In
McClung v. Hollingworth, 2007 WL 1225946 (4th Cir. Apr. 26, 2007), the Fourth Circuit
concluded that "since a dangerous weapon was discovered in a cell that was the 'exclusive
domain' of McClung and his cellmate, the constructive possession rule provides the necessary
'some evidence' sufficient to sustain McClung's disciplinary conviction." McClung v.
Hollingworth, 2007 WL 1225946, * 3 (4th Cir. Apr. 26, 2007); also see Reynolds v. Williamson,
197 Fed.Appx. 196 (3rd Cir. 2006)(despite petitioner's claim that he did not possess tools
necessary to retrieve the weapon from the plumbing, the court found "some evidence" supported
DHO's conclusion that petitioner was in constructive possession of weapon recovered from
plumbing of the cell where petitioner and his cellmate were the only persons with access to
plumbing and cellmate did not claim ownership of weapon); Scott v. Stewart, 2017 WL
1807139, * 3 (D.Md. May 5, 2017)(rejecting prisoner's due process challenge to the lack of
DNA or fingerprint analysis to support a claim of construction possession); Gonzalez-Martinez
v. Drew, 2011 WL 6982247 (D.S.C. Dec. 16, 2011)(finding "some evidence" to support the
DHO's decision that petitioner was in possession of a weapon where the weapon was located
under a locker in Petitioner's cell); Perez v. Rios, 2009 WL 499141 (E.D.Ky. Feb. 27,
2009)(finding sufficient evidence to support DHO's finding that because petitioner was in
control of his cell area, he was in possession of a hazardous tool). Although Petitioner cites

Delgado v. Wilson, 2011 WL 6750768 (E.D.Va. Dec. 23, 2011) and Broussard v. Johnson, 253 F.3d 874 (5th Cir. 2011) in support of his claim that constructive possession does not supply "some evidence" in support a disciplinary charge where other inmates had access to the area where the contraband was discovered, such cases are distinguishable. In Delgado, the Eastern District of Virginia determined that constructive possession did not supply "some evidence" to support guilt of a disciplinary charge because petitioner claimed he personally witnessed another inmate hiding contraband during routine searches, and the housing unit was an open dormitory-style layout of cubicles, without doors or walls, where 150 inmates could freely enter any of the areas. Delgado, 2011 WL 6750768 at * 1. In Broussard, the Fifth Circuit determined that constructive possession did not supply "some evidence" to support guilt of a disciplinary charge where the contraband was found in the kitchen area that was accessible to 100 inmates. Broussard, 253 F.3d at 877. Unlike McClung and Broussard, the SIM card that Petitioner was charged with possessing was not found in a common area "such as, a kitchen or television lounge in which the constructive possession rule has no application." Unlike Delgado, Petitioner does not allege that he witnessed inmates actually hiding contraband during search nor was Petitioner housed in dormitory style cubicles without doors or walls. Although Petitioner claims that approximately 400 inmates had access to his living area and locker, evidence was presented that the SIM card was found in a cell shared by Petitioner and one other inmate. The SIM card was found in an unsecured locker containing other personal items belonging to Petitioner, such as his legal papers, photographs, and institution clothing designated with Petitioner's name and identification number. Although the locker was unsecured, the SIM card was not found open and obvious inside the locker. The SIM card was found wrapped in a small piece of paper inside a

soap box that was located near the back of the locker underneath other soap boxes. Thus, it is improbable that another inmate entered Petitioner's cell undetected and carefully hid the SIM card as Petitioner alleges. Petitioner fails to offer any evidence that another inmate actually gained access to his cell such that the SIM card could have been planted.[4] See McClung, 2007 WL 1225946, * 2 – 3(although the cells remained unlocked during the day and all areas of the unit were not always monitored, "McClung provided no evidence that showed that any other inmate had actually gained access to his cell or that he had requested that his cell be locked because he feared such occurrence."); Ray v. Masters, 2017 WL 975948 (S.D.W.Va. Feb. 13, 2017)(finding "some evidence" to support DHO findings even though petitioner claims someone planted the weapon in his cell and video footage should show "a number of other inmates [went] in and out of [his] cell on the day of the incident"); Edmonds v. Ziegler, 2014 WL 321050 (S.D.W.Va. Jan. 29, 2014)(finding "some evidence" to support the DHO findings even though inmate claimed he was unaware of the weapon and it must have been left prior to his assignment to the cell).

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Petitioner's Application under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody (Document No. 2) and **REMOVE** this

---

[4] Petitioner offers the Declaration of Inmate Gibson stating that on the day of the search "[t]here were several inmates going in and out of Inmate Allen's area but at the same time inmates were moving back and found around the area that the SIM card was found." (Document No. 17, p. 16.) First, Inmate Gibson's statement that he observed inmate in Petitioner's "area" is vague. Furthermore, Inmate Gibson was called as a witness during Petitioner's DHO hearing and Inmate Gibson could have presented such testimony before the DHO.

matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: June 26, 2019.

Omar J. Aboulhosn
United States Magistrate Judge

23